OPINION
{¶ 1} Defendant-appellant, Thermal Seal, Inc., appeals from a judgment entered in favor of plaintiff-appellee, Jeni Reida, in the Franklin County Municipal Court. For the following reasons, we affirm in part and reverse in part.
 {¶ 2} On February 16, 1998, appellee began working for appellant as Office Liaison. Prior to her beginning work, appellee and Ron Heath, president of appellant, discussed the terms of appellee's employment. As part of those discussions, appellee disclosed to Mr. Heath her just-discovered pregnancy and negotiated a maternity leave. The parties also discussed vacation time. At Mr. Heath's request, appellee drafted a "pay package" agreement ("the agreement") based upon the outcome of their discussions. The agreement reads:
 {¶ 3} "As discussed and agreed upon, the following pay package was designed for Jeni Reida:
 {¶ 4} "Employment start date: February 16, 1998
 {¶ 5} "Beginning salary: $35,000/Salaried Employee
 {¶ 6} "Title: Office Liaison
 {¶ 7} "Insurance Benefits: None provided by Thermal Seal, Inc.
 {¶ 8} "401K: The company contribution varies depending on self participation. Vested after 5 years.
 {¶ 9} "Holidays: Paid company designated holidays
 {¶ 10} "Vacation: June wedding commitment in Vermont for the weekend of June 6, 1998.
 {¶ 11} "Long weekends with prior approval from Ron Heath. Effective 1999, Jeni is to receive two weeks of vacation.
 {¶ 12} "Maternity leave: 8 weeks/C-section
 {¶ 13} "Effective June 1, 1998, her salary will increase to $38,000 and she will be titled Office Manager. Based on performance."
 {¶ 14} Mr. Heath reviewed the agreement and added the "based on performance" condition to appellee's salary increase. Both Mr. Heath and appellee signed the agreement.
 {¶ 15} On June 1, 1998, appellee was promoted to the position of Office Manager and her salary was increased to $38,000. However, appellee testified that she did not receive the promised increase in her salary until June 6, 1998.
 {¶ 16} In August 1998, appellee began experiencing serious problems with her pregnancy, and her doctor recommended that she cease working full days. Appellee testified that she discussed her medical situation with Mr. Heath, and the two agreed that appellee would work limited hours until she gave birth and she would be paid at an hourly rate for her work.
 {¶ 17} After appellee's son was born on September 24, 1998, appellee commenced her eight weeks of maternity leave. Appellee testified that, approximately three days before she gave birth, Mr. Heath informed her that appellant could not afford to pay her during her maternity leave. Appellant never compensated appellee for the eight weeks she was on maternity leave.
 {¶ 18} After appellee returned to work the last week in November 1998, her relationship with Mr. Heath deteriorated. Appellee terminated her employment with appellant on April 8, 1999. On her last day of her employment, appellee worked only two and one-half hours before leaving appellant's place of business. Appellee testified that appellant did not pay her for her last two days of employment.
 {¶ 19} On July 28, 1999, appellee filed suit against appellant for breach of the agreement, seeking damages related to appellant's failure to pay her for: (1) her maternity leave; (2) her two weeks of earned, but unused, vacation time; and (3) her final two days of work. Additionally, appellee sought damages for the delay of her pay raise in June 1998.
 {¶ 20} The trial court conducted a trial during which appellee and Mr. Heath testified. On February 21, 2001, the trial court issued a judgment in appellee's favor. In the judgment entry, the trial court stated that the agreement between the parties was ambiguous, but agreed with appellee's argument that parole evidence established that the parties intended that appellee would be compensated for each item listed in the agreement. The trial court also determined that appellee was entitled to compensation for the delay in her salary increase and appellant's failure to pay her for the last two days she worked.
 {¶ 21} Appellant appealed the judgment and appellee cross-appealed. This court, however, dismissed the appeal and cross-appeal on jurisdictional grounds because the judgment entry did not include a determination of prejudgment interest. Upon remand, the trial court issued a second judgment entry again entering judgment for appellee and awarding her damages in the amount of $8,170.67. This damage award represented $6,333.32 for appellant's failure to compensate appellee during her maternity leave, $1,461.54 for appellant's failure to compensate appellee for earned, but unused, vacation time, $292.31 for appellee's final two days of work, and $83.50 for the delay in appellee's pay raise. Only appellant appealed from this second judgment entry.
 {¶ 22} On appeal, appellant assigns the following errors:
 {¶ 23} "1) The Trial Court erred by not [sic] finding the plain language of the Pay Package ambiguous.
 {¶ 24} "2) The Trial Court erred, as there is not sufficient evidence to show that Plaintiff was entitled to payment for unused vacation time.
 {¶ 25} "3) The Trial Court erred by improperly calculating Plaintiffs [sic] hourly rate and therefore granted a judgment over inflated by $613.50."
 {¶ 26} By its first assignment of error, appellant argues that the agreement between the parties is unambiguous. Appellant asserts that the only compensated leave the agreement contemplates is "paid company designated holidays." Because the other clauses in the agreement do not specifically include the word "paid," appellant asserts that, pursuant to the rule of expressio unius, the parties did not intend that appellee would be paid for the types of leave described in those clauses.
 {¶ 27} The construction of written contracts is a matter of law. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. When construing a contract, a court's principle objective is to ascertain and give effect to the intent of the parties. Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos. (1999),86 Ohio St.3d 270, 273. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v. Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. A court will only consider extrinsic evidence in an effort to give effect to the parties' intentions if the language of a contract is ambiguous. Shifrin v. Forest City Ent., Inc. (1992),64 Ohio St.3d 635, 638. Contract language is ambiguous if it is susceptible to two or more conflicting, but reasonable, interpretations. United Tele. Co. of Ohio v. Williams Excavating, Inc. (1997),125 Ohio App.3d 135, 153.
 {¶ 28} While appellant offers a reasonable construction of the agreement language, appellant's construction is not the only reasonable one. Appellee also offers reasonable construction of the agreement. She points to the opening clause of the agreement, which reads, "[a]s discussed and agreed upon, the following pay package was designed for Jeni Reida: * * *." (Emphasis added.) Appellee argues that the use of a colon after this phrase means that the word "pay" modifies every clause that follows, including the holidays, vacation, long weekends and maternity leave clauses. According to appellee's interpretation of the agreement, "paid company designated holidays" refers only to the type of holiday for which appellee could expect compensation, i.e., those holidays designated by the company as ones for which its employees would receive pay. Because the parties presented two conflicting, but reasonable, interpretations of the agreement, we conclude that the trial court properly ruled that the agreement was ambiguous.
 {¶ 29} Recognizing that this court might conclude that the agreement is ambiguous, appellant alternatively argues that the trial court erred in interpreting the ambiguity in the maternity leave and vacation clauses in favor of appellee because she drafted the agreement. Appellant's argument relies upon the long-standing rule of contract construction that a contract must be construed against the drafter. Graham v. Drydock Coal Co. (1996), 76 Ohio St.3d 311, 314. However, this rule is only a secondary rule of contract construction and is not applicable when a primary rule of contract construction clarifies the meaning of the contract. Malcuit v. Equity Oil Gas Funds, Inc. (1992), 81 Ohio App.3d 236, 240 ("Where application of [a primary rule] makes the meaning of the language clear, the secondary rule of construction of strict construction against the drafter is not applicable."). See, also, Moyer v. Brown (Aug. 30, 2002), Trumbull App. No. 2001-T-0126 (quoting Malcuit, supra); Krohn v. Intrinsics Int'l., Inc. (May 1, 1996), Summit App. No. 17369 (same). One such primary rule is that, when confronted with an ambiguous contract, a court must first examine parole evidence to determine the parties' intent. Cline v. Rose (1994), 96 Ohio App.3d 611, 615 ("When interpreting ambiguous contracts, courts must make a legitimate attempt, after hearing the relevant parol evidence, to determine the intent of the contracting parties. * * * `Where application of this rule makes the meaning of the language clear, the secondary rule * * * of strict construction against the drafter is not applicable.' "). See, also, Goodluck v. Chagrin Valley Athletic Club (Dec. 18, 1998), Geauga App. No. 98-G-2122 (same); South Town Centre, Inc. v. Burlington Coat Factory Warehouse of Dayton, Inc. (Oct. 25, 1995), Montgomery App. No. 14953 (same).
 {¶ 30} In the case at bar, the trial court properly first considered parole evidence regarding what the parties intended when drafting the agreement. Based upon the parole evidence, the trial court concluded that the agreement contemplated that all items listed in the pay package were to be paid unless specifically exempted. Because the trial court reached this conclusion after applying a primary rule of construction, it did not employ the secondary rule of construction invoked here by appellant.
 {¶ 31} Before beginning our review of this decision, we note that the determination of the parties' intentions is a factual inquiry and, thus, we must presume that the trial court's interpretation of the agreement via the parties' intentions is correct. State ex rel. Pizza v. Strope (1990), 54 Ohio St.3d 41, 46 (quoting Seasons Coal Co. v. Cleveland [1984], 10 Ohio St.3d 77, 80-81). Because the trial court found that appellee presented the more credible evidence, we must look to appellee's testimony to determine whether the trial court's decision is supported by "some competent, credible evidence going to all the essential elements of the case." Complete Gen. Constr. Co. v. Ohio Dept. of Transp., 94 Ohio St.3d 54, 62, 2002-Ohio-59 (quoting C.E. Morris Co. v. Foley Construction Co. [1978], 54 Ohio St.2d 279, syllabus).
 {¶ 32} Regarding payment for her maternity leave, appellee's testimony established that she and Mr. Heath negotiated the length of appellee's maternity leave and that Mr. Heath assured appellee that she would be paid throughout her maternity leave. Similarly, appellee testified that she negotiated two weeks of paid vacation and paid vacation time to travel to Vermont for a personal commitment. Accordingly, appellee provided sufficient parole evidence for the trial court to determine the parties' intent that each item listed in the agreement would be compensated. We conclude that, because the trial court reached this determination through use of a primary rule of construction, it acted properly by not employing the secondary rule of strict construction against the drafter. Thus, we overrule appellant's first assignment of error.
 {¶ 33} By its second assignment of error, appellant argues that appellee did not present sufficient evidence to prove that appellee was entitled to payment for unused vacation time. Once the trial court determined that the agreement granted appellee a two-week paid vacation, ambiguity existed as to whether appellee was entitled to payment even though she never used any of this vacation time. Based upon the testimony of appellee and Mr. Heath, the trial court determined that appellee was entitled to payment for the earned, but unused, vacation time. We disagree.
 {¶ 34} Appellee testified that she negotiated that she would receive two weeks of paid vacation effective in 1999. However, appellee admitted that the parties never discussed whether appellee would be entitled to compensation for vacation time she earned, but did not use. Appellee only assumed that she would be paid for unused vacation time because her previous employer had a policy of paying employees for unused vacation time. This testimony does not constitute sufficient competent, credible evidence to establish that the parties intended that appellee be compensated for earned, but unused, vacation time. Therefore, because a review of parole evidence fails to reveal the parties' intent, we must apply the secondary rule of strict construction against appellee as the drafter of the agreement. Consequently, we conclude that appellee is not entitled to payment for earned, but unused, vacation time, and sustain appellant's second assignment of error.
 {¶ 35} By its third assignment of error, appellant argues that the trial court erred in its calculation of the amount of damages owed to appellee. Specifically, appellant argues that: (1) damages for appellee's unpaid maternity leave should be calculated on a weekly, not monthly, basis; (2) damages for appellee's unpaid last day of employment should be calculated based only on the two and one-half hours she worked that day, not a full day; and (3) the trial court miscalculated the amount of damages due appellee for the delay of her promised pay raise.
 {¶ 36} A reviewing court will not disturb a trial court's determination of damages absent an abuse of discretion. Roberts v. United States Fid. Guar. Co. (1996), 75 Ohio St.3d 630, 668. See, also, Columbus Investment Group, Inc. v. Maynard, Franklin App. No. 02AP-271, 2002-Ohio-5968, ¶ 27. An abuse of discretion implies that the trial court acted in an unreasonable, arbitrary or unconscionable manner. Maynard, supra, at ¶ 27.
 {¶ 37} We conclude that the trial court did not abuse its discretion in calculating damages related to appellee's unpaid maternity leave or payment for her last day of work. The trial court awarded damages in the amount of $6,333.32 for appellee's unpaid maternity leave. Although the trial court did not specify how it calculated this component of the damage award, the trial court must have derived this amount by dividing appellee's yearly salary by twelve, and multiplying the resulting monthly salary by two. Since appellee received eight weeks, or two months, of maternity leave, the trial court did not abuse its discretion by calculating the maternity leave due appellee on a monthly basis, even though appellee was paid on a weekly basis. The trial court's method of calculation was not patently unreasonable. Likewise, the trial court did not abuse its discretion by awarding appellee damages equal to a full day's pay for her last day of work, even though appellee only worked two and one-half hours her last day. Appellee was a salaried, not hourly, worker.
 {¶ 38} However, we conclude that the trial court did abuse its discretion in concluding that appellee was entitled to $83.50 in damages for the delay of her pay raise. Appellant points out that, given appellee's $3,000 raise, she would be entitled to only $57.69 more per week. The trial court did not specify how it concluded appellee was entitled to $83.50 and, based upon the record, we cannot determine the basis for the amount of this award. Upon remand, we instruct the trial court to determine the number of days appellee did not receive her promised pay raise of $3,000 and recalculate the amount owed to her for those uncompensated work days. In conclusion, we sustain in part and overrule in part appellant's third assignment of error.
 {¶ 39} For the foregoing reasons, appellant's first assignment of error is overruled, appellant's second assignment of error is sustained, and appellant's third assignment of error is sustained in part and overruled in part. The judgment of the Franklin County Municipal Court is affirmed in part and reversed in part, and this case is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part and case remanded.
BOWMAN and LAZARUS, JJ., concur.